THE MANCHESTER BUILDING AND LOAN ASSOCIATION, PLAINTIFF IN ERROR, v. GEORGE W. ALLEE AND BERNARD KATZ, DEFENDANTS IN ERROR.

Argued March 23, 1911—Decided June 19, 1911.

1. A judgment will not be reversed for the refusal of a trial judge to charge a request that is unsupported by the evidence or for his failure to so modify a request that it would be error not to charge it.

2. If a modification of the language of a request is required in order to entitle the party, as matter of strict right, to have his request charged, it is not error to refuse to charge such request.

3. The existence of a special agency is, like any other fact, to be determined from all the relevant testimony, hence it is not error to refuse to charge that upon proof of one of such relevant facts specified in the request the special agency is established.

4. A., owing money to B., executed with K. as his co-obligor a bond to B. which was given by K. to A.'s attorney for delivery to B. *Held*, that the question whether A.'s attorney was the special agent of K. for the delivery of such bond to B. was for the jury upon all the relevant testimony, and that it was not error to refuse to charge that if a condition as to delivery was imposed by K. on A.'s attorney the latter was a special agent of K.

5. An assignment of error based on a bill of exceptions to a refusal to charge a request, does not present for review an inaccuracy of statement made by the court in giving the reason for such refusal.

On error to the Supreme Court, whose opinion is reported in 51 *Vroom* 185.

In 1906 George W. Allee was, and for many years had been, the secretary of the Manchester Building and Loan Association, and during the same period was also employed in an important position by a brewing company of which Bernard Katz was the president. In April of that year Allee was found to be short in his accounts with the building association to the amount of some $14,000. When this discovery became known, Allee absented himself from the state for a time during which the association levied an attachment on his property and made a criminal complaint against him. Later, he returned, gave bail (Katz going his security), and started in to make restitution by raising and paying over to the asso-

ciation the $14,000 he owed to it. In the negotiations and arrangements necessary to this end, he employed Wood McKee, Esq., who also represented him as attorney-at-law in the pending criminal prosecution. By the middle of May, McKee, acting for Allee, had got together $9,000 in cash and had practically arranged with the association to take for the remaining $5,000 two bonds, one of $2,000 to be made by Allee and James A. Graham, an officer of the brewing company, and one for $3,000 to be made by Allee and Katz, which is the bond in suit. In interviews between Katz and McKee, touching the preparation of this bond, Katz insisted that it should contain a condition that it was not to be paid in the event that Allee should be sent to prison. Upon being satisfied by McKee that such a condition would render the bond useless, if not illegal, Katz executed the bond in suit, which was a straight bond. The avowed policy of Allee, McKee and Katz, at this time, was to get whatever benefit might accrue to Allee from the declaration of the building association that complete restitution had been made by Allee. No precise plan beyond this had been determined upon, as Allee had not yet been indicted; but it was considered that in any event Allee's chief hope of escaping imprisonment must rest upon the effect of such statement by the building association whether made to the grand jury in the hope of heading off an indictment or to the court by way of application for leniency. To either of these objects the bond in question was essential, since without it there was no complete restitution, and without such restitution no statement from the association. All of the actors in the transaction seem to have understood the situation in this respect alike, and there is not a suggestion that the association was to make a false declaration of restitution. Such being the inchoate plan determined upon as most likely to get Allee off without imprisonment, the bond was signed by Katz, with McKee as subscribing witness, and retained by Katz from May 17th, when it was signed, until May 21st when, at his office in the brewery, Katz handed the bond to Allee in the presence of Van Winkle, a bookkeeper, with instructions to deliver it to McKee with a message to be given to McKee

which both Katz and Allee were prevented from testifying to in chief by a ruling of the trial court, which was erroneous upon the ground given, viz., that McKee was not present. The sustaining of this ruling by the Supreme Court upon the same ground was therefore erroneous, although by that time it was apparent that it was non-injurious to Katz who, upon error to this court, does not take the point at all. Van Winkle, by reason of his saying at first that McKee was present when the bond was delivered to Allee (which was clearly an error in fact), was permitted to testify as to the condition imposed by Katz, with respect to which he testified that "Mr. McKee assured Mr. Katz that the bond would not *be delivered* in case Mr. Allee *was imprisoned.*" Afterward he said that the bond was to be delivered to McKee at the latter's office, and that "the conversation (between Katz and Allee) was that the bond would be signed and delivered to Senator McKee, and would be held by him and *delivered* only in case Mr. Allee *was not imprisoned;* that is all there was to it." Again, that Katz "was not to be liable for the amount if the man was not at liberty," and finally "Mr. Allee and myself went over to Mr. McKee's office and delivered the bond with the instructions as stated before, that it was to be held by him and only *delivered* to the building and loan association in case Mr. Allee *was not imprisoned.*"

VanNordt, another employe of Katz, testified to a conversation he had with McKee, as follows: "I told Mr. McKee that I had been informed that he had a bond in his possession signed by Mr. Katz for $3,000, and that the said bond was a part of the indebtedness due to the building and loan association; that the bond, as I understood, was to be held by him for them and only *delivered* in case Allee *was not imprisoned.* And to this Mr. McKee replied that that was the case," and again that McKee agreed to the witness' statement "that the Katz bond was there already signed only to be *delivered* if Mr. Allee *was not imprisoned.*"

Katz, himself, on cross-examination, testified that previously to his delivery of the bond to Allee he said to Senator McKee, "I will not go and give him that bond except that we

would have put in the bond that Mr. Allee is to get his freedom, if not, then the bond should be null and void. Well, the senator said, that cannot be put in, but he assured me that the bond would not be used if he does not get his freedom." As to the condition on which the bond was to be delivered to McKee, Katz's version was: "I sent for Mr. Allee and Mr. Van Winkle and said, 'Now, you cannot tell, if anything happens to me I want to have that you should be witnesses. Now, you go over there and if Mr. McKee says to you that this is going to be kept, and this is only good in case Mr. Allee gets his freedom, you give it up, if not, bring it back.' "

Allee and Van Winkle delivered the bond to McKee on May 21st, and on the day following McKee made arrangements to pay the $14,000 to the association which included this bond. Allee had been indicted on May 21st, but the fact was not known until the 22d. On May 25th Allee was arraigned and plead not guilty and gave bail with Katz as his bondsman. On June 9th, McKee settled Allee's debt to the association by delivering the two bonds and the balance in cash. On June 11th, Allee, through his counsel, entered a plea of *"non vult,"* and on June 22d was sentenced to one year's imprisonment, which he served. During this year Katz made no demand upon anyone for the return of his bond, but at the end of the year, when the bond fell due and this action was brought, made the defence that the imprisonment of Allee constituted a violation of the condition attached to the delivery of the bond which rendered it void under the doctrine of special agency as illustrated by the case of *Black* v. *Shreve,* 2 *Beas.* 455, along the lines of which decision the case was tried in the Circuit Court. Under this trial theory the question whether, under the circumstances, McKee became the special agent of Katz was left to the jury with instructions that "when a man is a special agent, those who deal with him are bound to inquire as to the extent of his authority," and, "as a matter of law, when a man is a special agent, the parties dealing with him must inquire as to the extent of his power." "If a special agent violate his instructions, his principal is not bound by his acts unless subsequently ratified;" and also that, "In dealing with

a special agent a third party does so at his peril, unless he ascertain the agent's authority from the agent's principal."

Verdict and judgment having gone for the plaintiff, the defendants took their writ of error to the Supreme Court, in which the judgment was reversed upon a ground which is thus set forth in the opinion of that court.

"The eighth request to charge was that if the jury found that the bond was delivered to McKee by Katz upon the express condition that it was not to be delivered to the plaintiff should Allee be sent to prison, that McKee thereupon became a special agent, and if he delivered the bond in violation of his instructions, the plaintiff could not recover against the defendant, even though the plaintiff did not know that such instructions had been given to Mr. McKee. Instead of charging this, the trial court left the question to the jury as to whether McKee was a special or a general agent, and proceeded to say that if he was a general agent, the association was not bound to inquire as to the extent of his authority. Under the doctrine laid down by the Court of Errors and Appeals in *Black* v. *Shreve, 2 Beas.* 455, if the condition was imposed upon McKee by Katz, McKee was a special agent, * * * the defendant was entitled to have the jury instructed as stated in the request to charge as above set out, and its refusal was error."

The exact language of the request was: "If the jury find that the bond was delivered to Mr. McKee by the defendant Katz upon the express condition that the same was not to be delivered to the plaintiff in the event that Allee should be sent to prison, Mr. McKee thereupon became a special agent." And the answer of the trial judge to this request was, "I refuse to charge that, gentlemen, except so far as I have already charged upon that point."

By the present writ of error, the building and loan association seeks to reverse the judgment of the Supreme Court which reversed the judgment recovered by the association in the Circuit Court of Passaic county.

For the plaintiff in error, *Jacob Willard De Yoe* and *Michael Dunn.*

For the defendant in error Bernard Katz, *Bilder & Bilder* and *William B. Gourley.*

The opinion of the court was delivered by

GARRISON, J.   The refusal of the trial judge to charge the defendants' eighth request was not error.   The request was unsupported by the testimony and unsound in law.

*First.* There was no evidence that Katz delivered the bond to McKee upon the express condition stated in the request, or that such condition accompanied the delivery of the bond to McKee by Allee through whom such delivery was in fact made. Such a condition as that stated in the request was testified to, if at all, with respect to the preliminary interviews that took place between Katz and McKee before the bond was prepared, while the conditions to be inserted in it were yet under advisement, and Katz was still insisting upon a condition subsequent similar to that stated in the request.   For obvious legal reasons such testimony afforded no support for the statement of the request as to the condition that was attached by Katz to the delivery of the bond at the time it was given to McKee for delivery to the association.   At this juncture, the condition imposed by Katz, according to his own witnesses, was that the bond should not be *delivered* if Allee *was imprisoned*—an intelligible condition precedent to delivery—not if Allee *was going to be* imprisoned, or "in the event that Allee should be sent to prison," which is the statement of the request.

That the refusal of a request that is unsupported by the evidence is not error is the established rule of this court.   *Humphreys* v. *Woodstown,* 19 *Vroom* 588.

If it should be argued that the condition stated in the request, although not supported by direct evidence, might be implied, the situation is not changed.   The court could not have told the jury that a condition thus implied was an "express condition," which is what the request called for; and if an implied condition alone was supported by the evidence, it was useless to charge the jury as to the effect of an express condition of which there was no evidence.   Where a request does not fit the case, it is no part of the court's duty to so modify its

language as to render it applicable to the testimony. A request must stand or fall by the language in which it is presented to the court unless modified by counsel.

If a modification of such language, however slight, is required in order to entitle the party, as matter of strict right, to have his request charged, it is not error to refuse to charge such request. The reversal of a judgment for the failure of the court to so modify a request that it would be error not to charge it, is a thing yet to be heard of.

Upon established principles of appellate procedure, therefore, the judgment of the Circuit Court should not have been reversed for its refusal to charge the eighth request of the defendants.

*Second.* The request was unsound in law.

A charge of the request or of its legal import would have been erroneous. It is not true that "if the condition was imposed upon McKee by Katz, McKee was a special agent." Special agency can be neither created nor proved by the single-evidential fact stated in the request. Other considerations bearing upon the question of McKee's agency for Katz, and particularly upon its special character, were directly relevant, and had been testified to with great detail, notably his existing relations to the other actors in the transaction and his general agency for Allee, the co-obligor with Katz on the bond and in whose interest it was to be delivered to the plaintiff. It was admittedly, as the general agent of Allee, that McKee first approached Katz and afterwards dealt with him. If, in the course of such dealing, McKee became in fact an agent for Katz, such fact was susceptible of proof, but the mere circumstance that a condition was imposed upon McKee by Katz, while evidential upon the question of such agency, was not conclusive proof of it; still less was it conclusive proof that McKee was Katz's special agent with all that that implied as to the building association which knew McKee in the transaction only as Allee's attorney and general agent.

The rule of special agency contemplates that third parties shall have by way of notice whatever *indicia* normally attend the special, *i. e.,* the exclusive nature of such unique employ-

ment. The difference between the authority to perform a particular act in a particular way and the authority to perform all acts connected with a particular employment, which is the essential distinction between a special and a general agency, while fraught with momentous consequences to third parties, affords but slight surface indication by way of notice. The peril incurred in dealing with a special agent should therefore not be made more real by being made more insidious. The sole protection afforded by the rule is that such agent shall be in fact a special agent with all that that implies, as was pointed out by Chief Justice Beasley in *Ordinary* v. *Thatcher,* 12 *Vroom* 403. Hence the emphasis of the rule: "He who deals with a special agent does so at his peril," falls on the word "special." It is the special character of the agency that imparts in law the peculiar force to a secret instruction, not the secret instruction that imparts in law a special character to an existing agency. If this were not so, such an instruction .would, as matter of law, make one my special agent, although he were in fact my general agent, or the agent of my adversary or of one of the actors in a transaction with whom I was dealing at arm's length. There is no such rule of law.

The question of agency in any form is one of fact, and that of special agency peculiarly so, unless the incapacity of one to become the special agent of another so conclusively appears as to present an insurmountable legal barrier. The submission to the jury, therefore, of Katz's contention that McKee was his special agent, as a question to be determined from all the relevant testimony, was as favorable to Katz as his case permitted. To have confined the jury in the determination of this question to the single evidential circumstance mentioned in the defendants' request would have been in our opinion clearly erroneous.

The judgment of the Circuit Court should not have been reversed for failure to charge this request.

The Supreme Court was also of opinion that the Circuit Court committed error in what the judge said in response to the defendants' eleventh request. We find no error in this respect that entitles the defendant to a reversal. The substance of the request had been charged, hence its refusal was

not error. If the judge in stating his reason for refusing the request inaccurately rehearsed what he had already charged, the way to take advantage of such inaccuracy was not by an exception to the refusal to charge, but by asking for an exception that would bring the precise point to the attention of the judge, which was not done in the present case. The assignment of error as to the refusal to charge is completely answered by the fact that the request was covered by the charge. No assignment of error and no bill of exceptions raised in the Supreme Court any other question arising out of the language in which this request was denied.

We conclude, therefore, that the judgment of the Supreme Court reversing the judgment of the Circuit Court should be reversed, and that the judgment of the Circuit Court should be affirmed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, SWAYZE, TRENCHARD, PARKER, VOORHEES, BOGERT, VREDENBURGH, CONGDON, SULLIVAN, JJ: 11.