JOSEPH L. BODINE, PLAINTIFF IN ERROR, v. C. BERG AND MARIE BERG, DEFENDANTS IN ERROR.

Submitted December 11, 1911—Decided March 4, 1912.

1. In the absence of proof of the law of another jurisdiction the inference is that the common law still prevails there.
2. At common law the alteration of the date of a promissory note is a material alteration, and when made by one not a stranger to the obligation will avoid it as to all parties not consenting thereto.
3. When the general manager of a bank accepts for the bank a promissory note payable to its order with surety, in the place of one then held without surety, and as a part of the transaction of acceptance alters the date of the new note to correspond with that of the note surrendered, the bank is chargeable with the act of its officer as one done in the course of the business of the bank by a general agent, and it cannot, as to non-consenting obligors, rely upon the altered note as evidence of the indebtedness, and at the same time disavow the act of its officer and agent, and claim his action to be that of a stranger, or beyond his authority.
4. The bank is chargeable with the general manager's knowledge of the fact that it holds a note which has been altered by its general manager, and if with this knowledge it accepts payments on account of the note, and subsequently assigns the note as altered, such acts amount to a ratification of the act of the manager in altering the note.

On error to the Supreme Court.

For the plaintiff in error, *Scoll Scammell.*

For the defendant in error, *William E. Blackman.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff, as assignee of the Mechanics' and Traders' Bank, Market Branch, of Brooklyn, New York, brought his suit against the defendants to recover the amount claimed to be due on two promissory notes, the first of which is in the form following:

"$4,435.50.  BROOKLYN, N. Y., August 31, 1908.

"On demand, after date, I promise to pay to the order of Mechanics' and Traders' Bank, Market Branch, forty-four hundred and thirty-five and 50–100 dollars at Mechanics' and Traders' Bank, Market Branch.  Value received.

"C. BERG,
"MARIE BERG."

The other note was dated October 12th, 1908, and was in the same form except as to amount, which is $4,200.  The notes came into existence under the following circumstances:  Mr. Berg had obtained from the bank a loan on his individual note bearing date August 31st, 1908, and in October of that year the officers of the bank becoming dissatisfied called upon Mr. Berg to supply additional security, and agreed to accept his wife as surety.  At the same time it appears that Mr. Berg's account was overdrawn to the extent of about $4,100, so the loan clerk of the bank, under the direction of Mr. Mailey, who was the manager of the market branch of the bank, in which position he had, as he testified. the same control as a cashier ordinarily has, prepared two notes, the first to represent the credit already given on August 31st, 1908, and another for $4,200, to represent the overdraft, each note being dated October 12th, 1908.  Mr. Berg signed both, carried them to his wife, obtained her signature, brought them back, delivered

them to the manager, and received from him the individual note dated August 31st, 1908, and tore it up, and thereupon the date of the new note given for $4,435.50 was altered by erasing October 12th and inserting August 31st in its place.

Mr. Mailey, the general manager, testifies, "I still held in my possession the original note and gave Mr. Berg this new note, and he took it home and had his wife sign it and brought it back to me and tore up the old note, that is the one of C. Berg, and gave me this one in the place of it, and the date was changed in my office, at my desk, in the presence of Mr. Berg, to have it correspond with my loan book and also the original note." The real controversy in this case is over this note, and the effect of the alteration of its date, no defence being interposed to the note for $4,200, except payment, and that question was submitted to the jury.

There is no testimony in the case that the wife ever consented to, or had any knowledge of, the alteration of the date, but, although the plaintiff produced evidence tending to show that Mr. Berg had knowledge of the alteration, he denied it, and this disputed question of fact was submitted to the jury by the trial court. Regarding the effect of the alteration of the note on the liability of the wife, the trial court charged the jury that "the legal effect of that change was to release the wife from any obligation on that note," to which exception was taken. A considerable portion of the brief of the plaintiff in error is based upon the Negotiable Instruments act of this state (*Pamph. L.* 1902, *p.* 583), but the case is barren of any proof of the law of the State of New York (where this contract was made and delivered) relating to commercial contracts. The plaintiff did prove the law of New York state concerning the liability of married women, from which it appears that married women are not prohibited from assuming liability as surety. As there was no offer made to show what the law of New York was regarding the alteration of commercial paper, the inference is that the common law still prevails there (*Waln* v. *Waln,* 24 *Vroom* 429), and under it the alteration of the date of a contract is a material one and discharges all parties to the instrument from liability thereunder except those

who have consented to it. *Master* v. *Miller,* 4 *T. R.* 320; 2 *Sm. Lead. Cas.* (8th ed.) 1277, and notes.

In *Wood* v. *Steele,* 6 *Wall.* (*U. S.*) 80, the date of a promissory note was changed after it was signed by the defendant Steele, as surety for one Newson, without his knowledge or the knowledge of the plaintiff who accepted the note from Newson for a loan to him. The court instructed the jury "that if the alteration was made after the note was signed by the defendant Steele, and by him delivered to the other maker, Newson, Steele was discharged from all liability on said note." It did not appear by whom the alteration was made, but as it was delivered in its altered condition by Newson, and none of the other parties had knowledge of the change in date, the inference is that it was changed by Newson. In affirming the foregoing instructions the court said: "It is now settled both in English and American jurisprudence that a material alteration in any commercial paper without the consent of the party sought to be charged extinguishes his liability. * * * The fact in this case that the alteration was made before the note passed from the hands of Newson cannot affect the result. He had no authority to change the date." The suit in the above case was brought by the holder of a promissory note against a surety who defended upon the ground that the date had been altered, presumably by his joint maker, after he had signed it and without his consent, and it is not unlike the present case so far as Mrs. Berg is concerned if her husband altered the note without her authority or knowledge.

The note in the present case was altered in a material respect by the managing officer of the payee and retained as the property of the bank, without the knowledge of the wife, and if the party to whom the alteration is charged was not a stranger to the obligation altered, such change would release a non-consenting obligor, for a material alteration made by a party to a note or obligation will avoid it as against another party not consenting. 2 *Cyc.* 150, and cases cited; *Draper* v. *Wood,* 112 *Mass.* 315. It is urged that in making the alteration complained of the general manager of the bank exceeded his authority, and that therefore the alteration was made not

by the bank, but by a stranger. We do not question the correctness of the proposition that the alteration of contracts by one not a party to them, or without authority therefor, would ordinarily be a spoliation which would not change the original contract between the parties to it, but the present case is not confined to such conditions, for here the general manager of the bank, in the due course of its business, accepted, as its agent, a note in substitution of another, and, as a part of the transaction, at once changed the date of the note from October 12th, 1908, to August 31st, 1908, for the declared purpose of making the date accord with the one to be given up. The act was done in furtherance of the interests of the bank by an officer having general powers over the making of loans and the acceptance of securities therefor, and, as claimed by plaintiff, with the consent and in the presence of one of the obligors, upon whom the change was binding, and the question is whether as to the non-consenting obligor the alteration by the general manager of the bank was so foreign to his authority as to excuse the bank from all responsibility in the matter, and to make the general manager a stranger to the transaction.

In *Hollingsworth* v. *Holbrook*, 80 *Iowa* 151; 20 *Am. St. Rep.* 411, a chattel mortgage given to secure the note of the plaintiff was materially altered by the agent of the mortgagee. The trial court instructed the jury as follows: "If, however, you find from the evidence that the property mortgage was originally purchased from D. W. Halsted (the agent), and that all transactions in relation thereto, including the giving of the notes, and the securing of the same, were had with D. W. Halsted, and that the defendant B. M. Halsted (mortgagee) entrusted the whole matter of renewing and securing the notes, to D. W. Halsted, both as to time of extension, and the kind and amount of security to be obtained, and that after obtaining said mortgage, the said D. W. Halsted fraudulently and wrongfully made the alleged alteration therein, then the said D. W. Halsted was so far the agent of the said B. M. Halsted that his said wrongful and fraudulent act will avoid the entire instrument." The action in this case was brought by the mortgagor to recover property taken by the mortgagee

under the altered chattel mortgage, and the question presented was whether the holder of the mortgage was chargeable with the alteration made by his agent without his knowledge. The appellate court, in affirming the foregoing instructions, said: "We think the paragraph in question was substantially correct, as applied to the facts in this case. The agent was not restricted by the terms of his agency as to the security he might take. He was authorized to act upon his own judgment and take such security as he thought best. In performing the duties assigned him, if the claim of the plaintiff be true, he made a fraudulent alteration in the mortgage. In doing so, he did not act for himself, nor for the mortgagor, but for his principal. It may be conceded that such alteration was not contemplated by his instructions as agent, but it was not forbidden, and it operated as a legal fraud upon plaintiff. It was in the line of his agency and because of it."

We are of opinion that when the cashier or manager of a bank accepts a promissory note payable to the order of the bank with surety, in the place of one then held without surety, at the same time surrendering the unsecured note to its maker, and as a part of the transaction of acceptance alters the date of the new note to correspond with that of the note surrendered, the bank is chargeable with the act of its officer as one done in the course of the business of the bank by a general agent, and it cannot, as to the non-consenting obligors, rely upon the altered note as evidence of the indebtedness, and at the same time disavow the act of its officer and agent and claim his action to be that of a stranger or beyond his authority.

There is a distinction between the authority of a special and of a general agent which does not depend upon the number of transactions in which the agent is authorized to represent the principal, but upon the scope of his authority so to do in the given transaction. The true distinction, as stated by this court in *Manchester Building and Loan Association v. Allee et al.,* 52 *Vroom* 605, is "between the authority to perform a particular act in a particular way, and the authority to perform all acts connected with a particular employment." In the

transaction under review the manager was, as thus defined, the general agent of the bank, and hence all acts performed by him strictly in connection with the particular employment in which he was put forward to represent the bank and done in supposed furtherance of its interests were binding upon it whether or not they were beneficial to it, or whether, through the negligence of the agent or his ignorance of the legal effect of his acts, they were in fact injurious. The mistake or the negligence of such an agent is in law the mistake or the negligence of the principal. The question is not whether the agent, in what he did, acted without negligence or whether the result of his conduct was beneficial to the principal, but whether the acts he performed were done strictly in connection with the particular matter in which he was employed to act for the principal. There is no rule of law by which an agent represents his principal only so long as his acts are beneficial and performed without negligence, but ceases to represent him when the acts he performs as agent are negligently performed or turn out to be the reverse of beneficial to the principal. One who claims the beneficial results of a general agency cannot disavow the untoward results of the negligent acts of his own agent in the identical transaction.

The case of *Hunt* v. *Gray*, 6 *Vroom* 227, relied on by the plaintiff in error, is not applicable, for there the alteration was made by one without any interest in the note, and therefore a stranger in law to the obligation, his only authority being to carry the note to a bank for discount, and his act in altering it was clearly one of spoliation, in which case it is well settled the alteration does not annul the obligation of the maker to satisfy it. Should we assume, however, that the alteration was made by the manager without the authority of the bank, the fact that the bank held as an asset this altered note was known to the manager, which knowledge was acquired by him in a transaction within the scope of the bank's business. "A notice to a cashier is notice to a bank. This must be the rule, otherwise it will be impossible to get on in the ordinary course." *Trenton Banking Co.* v. *Woodruff et al.*, 1 *Gr. Ch.* 117.

Therefore in this case the bank had knowledge that it was the holder of a promissory note, the date of which had been, as it is claimed, altered by its general manager without authority. In such case the act of alteration may be ratified by the bank, and it has been decided that accepting payment on account of the note, and the bringing of a suit on the note as altered, amounts to a ratification of what had been done. *First National Bank of Springfield* v. *Fricke, 75 Mo.* 178.

By accepting and retaining the beneficial result of an unauthorized act of his agent, the principal, having knowledge of the facts, ratifies such act, and cannot repudiate the consequences of a particular act of the same agent in the identical transaction which produces the contract, the fruits of which are retained. *Keim* v. *Lindley, 30 Atl. Rep.* 1063; *affirmed, 9 Dick. Ch. Rep.* 418; 1 *Pars. Cont.* 49, 52; *Rader's Administrator* v. *Maddox, 150 U. S.* 128; 31 *Cyc.* 1257, 1270.

In the present case, it is undisputed that while the bank held the note, chargeable with knowledge of its alteration by its own officer, it did not disavow the act but accepted payments on account thereof, and also, after its maturity, assigned the note, as altered, to the plaintiff who brings his suit on the note as changed. This amounts to a ratification by the bank of the act of its manager in altering the note when he accepted it for the bank, and therefore the alteration was not made by a stranger, but by the payee and holder at the time. We find no error in the conduct of the trial on this branch of the case.

The plaintiff in error also argues that the consideration given to the husband for the first note, which was afterwards destroyed, will support a recovery upon the common counts against both husband and wife, "even though the note was avoided by the markings of the bank." It is sufficient to say on this point that the attention of the trial court was not distinctly called to this matter, nor is there any assignment of error to support it. We are referred to the fourth and sixth assignments of error as raising this question. The fourth assignment rests upon a refusal to charge as follows: "If you

find that the alteration was innocently made, without any fraudulent intention, but did alter the written instrument in a material respect, then if you find that the defendant Carl Berg was given new credit at the bank, and the loans already made to him were not called by the bank, and that the new note was given in consideration of the extension of time, and in order that further advances might be made, and that the defendants, and both of the defendants promised to pay the sum of $4,435.50 if the loans were not called upon the defendant Carl Berg, and if further advances were made to him, then you must give judgment for the plaintiff for the sum of money which you shall find to be due upon the note marked Exhibit P-3, and for the sum of money which you shall find to be due upon the loans made on October 12th, 1908, by Mechanics' and Traders' Bank to the defendant Carl Berg, upon the faith of the promise of the defendant Carl Berg and the defendant Marie Berg to pay the said loan against both defendants." This is a request to charge, in substance, that even if the wife should not be liable on the altered note, still she could be held on an independent promise for a consideration moving to her husband. There is no evidence to support any such promise, and as the request was not limited to the husband, but included the wife as to both notes, it was properly refused. There was no request that the husband alone could be held upon the common counts.

The sixth assignment of error affords no basis for the argument that the right of the plaintiff to recover upon the common counts against the husband was excluded from the jury. What the court said was, whether the note "can be recovered against the husband depends upon whether the change of date was made with his consent, because the changing of the date without the consent of either of the parties destroys the note's efficiency as the basis of an action of this kind upon the note."

A careful examination of this record fails to disclose that the point last argued was ever called to the attention of the trial court. The case was tried entirely upon the question of the alteration of the note and the amount of payments made on account of both notes.

The views expressed lead to an affirmance of the judgment.

*For affirmance*—THE CHANCELLOR, GARRISON, TRENCHARD, PARKER, BERGEN, VOORHEES, KALISCH, VREDENBURGH, CONGDON, TREACY, JJ. 10.

*For reversal*—THE CHIEF JUSTICE, SWAYZE, MINTURN, BOGERT, WHITE, JJ. 5.