# City Manager of Medford *vs.* Civil Service Commission & others.

Suffolk. October 10, 1952. — October 29, 1952.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Municipal Corporations*, Officers and agents. *Civil Service. Taxation*, Assessors. *Declaratory Judgment. Equity Jurisdiction*, Declaratory relief. *Equity Pleading and Practice*, Parties, Declaratory proceeding. *Attorney General. Public Officer.*

An affirmative vote by the voters of a city having three assessors to part one of a question, whether "the office of Assessor of Taxes [should] be placed within the classified civil service," submitted to the voters on the ballot at a city election pursuant to a petition under G. L. (Ter. Ed.) c. 31, § 49A, as appearing in St. 1941, c. 414, bearing the approval in writing of only the one incumbent of the office of assessor who had served continuously in that office for five years and whose name alone appeared in part two of the question, whether he should continue "in said office," also voted in the affirmative by the voters, brought under civil service merely the office of assessor of which he was the incumbent and not all three offices of assessor.

The manager of a city who by charter was its appointing authority was entitled to maintain a suit in equity under G. L. (Ter. Ed.) c. 231A for a declaratory decree as to whether all or only one of the three appointive offices of assessor had been placed within the classified civil service by a certain vote of the voters of the city at a municipal election where it appeared that shortly before the commencement of the suit the manager had been directed by the director of civil service to make requisition upon him for names of two persons for appointment as assessors in place of two assessors not qualified under the civil service whom the manager regarded as legally holding office despite an assertion of the director to the contrary and to terminate the "employment" of those two assessors in fourteen days, and that the manager had been advised by the commissioner of corporations and taxation that those two assessors had been superseded by two persons named by the commissioner to serve temporarily.

The Attorney General was not a necessary party to a suit in equity under G. L. (Ter. Ed.) c. 231A by the appointing authority of a city for a declaratory decree as to whether all or only one of the three offices of assessor had been placed within the classified civil service by vote of the voters of the city, in which suit no constitutional question was involved. [330]

It was not to be assumed that public officers as defendants in a suit in equity for a declaratory decree would not act according to the law declared by this court in the suit, and the final decree therein need contain no order against them. [331]

BILL IN EQUITY, filed in the Superior Court on March 26, 1952.

The suit was heard by *Hanify*, J.

*Mark E. Gallagher, Jr.*, City Solicitor, (*Bradley P. Howes* with him,) for the plaintiff.

*James W. Kelleher & James McCaffrey*, (*John S. Ahern* with them,) for the defendants Catino and others.

*Charles H. Walters*, Assistant Attorney General, for the civil service commission and another.

WILKINS, J. The declaratory judgment statute is invoked seeking, in part, that "an interpretation be made as to the status of the membership of the offices of assessors" of Medford. G. L. (Ter. Ed.) c. 231A, inserted by St. 1945, c. 582, § 1. The defendants are the civil service commission, the director of civil service, the commissioner of corporations and taxation, Samuel D. Potts, Alfred Calabrese, and James Connors "as they constitute the board of assessors of the city of Medford," and Michael Catino and Curtis S. Leonard, who, with Connors, have been temporarily designated to act as assessors by the defendant commissioner. The defendants other than Connors, Calabrese, and Potts demurred to the bill, and interlocutory decrees were entered overruling the demurrers. The defendants Catino and Leonard appealed. The facts have been agreed, and the case has been reserved and reported without decision. G. L. (Ter. Ed.) c. 214, § 31.

The assessors in Medford are three in number and appointed for three year terms. G. L. (Ter. Ed.) c. 41, § 24, as appearing in St. 1951, c. 364. Under its present Plan E charter the appointing authority is the city manager. G. L. (Ter. Ed.) c. 43, § 104, inserted by St. 1938, c. 378, § 15. Prior to March 19, 1952, Connors, Calabrese, and Potts had been appointed and on that date were serving as the assessors. The present controversy, although of recent origin,

stems from the regular city election held on November 6, 1945, when the voters, pursuant to G. L. (Ter. Ed.) c. 31, § 49A, as appearing in St. 1941, c. 414,[1] answered in the affirmative both parts of the following question: "Question 1. (Part 1.) Shall the City of Medford vote that the office of Assessor of Taxes be placed within the classified civil service?

| YES |  |
|-----|--|
| NO  |  |

(Part 2.) If it is voted to place the office of Assessor of Taxes within the classified civil service shall the City of Medford vote to provide for the continuance in said office of Assessor James Connors, the present incumbent thereof, after passing a qualifying examination?"

| YES |  |
|-----|--|
| NO  |  |

The referendum appeared upon the ballot as a result of the certification of the registrars of voters that a petition, approved in writing by Connors, had been filed with them in proper form. Connors had served five consecutive years as assessor. When the petition was filed in 1945, Catino and Leonard also were assessors, but had not served five consecutive years, and did not approve the petition in writing. No other similar petition was filed.

On April 30, 1946, the director of civil service certified that Connors had passed a qualifying examination and certified his name. Connors thereafter continued to hold office without reappointment. The proper appointing authorities in the city from time to time made appointments to the other two positions of assessors without any application to the department of civil service and without any request by the department or by the commissioner of corporations and taxation that such application should be made. No objection was raised by anyone for nearly six years. Then, on March 19, 1952, the plaintiff city manager received two communications bearing the preceding date. One was from the director of civil service asserting in substance that in the opinion of the civil service commission Potts and Calabrese were illegally occupying the positions of assessor be-

---

[1] See St. 1946, c. 45; St. 1945, c. 701, § 8.

cause they had not been appointed in accordance with the civil service laws and rules. Reference was made to "an informal opinion from the office of the Attorney General, that the vote of the citizens of Medford taken in 1945 in placing the office of assessor within the classified civil service placed all three positions under civil service." The letter concluded with a direction that the "employment" of Potts and Calabrese be terminated within fourteen days, and their positions filled after filing a requisition upon the defendant director. The other letter was from the defendant commissioner and read: "You are hereby advised that because there is no legally constituted board of assessors in Medford, I have this day as commissioner of corporations and taxation named Michael Catino and Curtis S. Leonard to serve as assessors until the civil service commission certifies persons as qualified to serve on the board of assessors in the city of Medford." On April 16 the defendant commissioner appointed Connors also to act temporarily as assessor.[1]

Catino and Leonard have taken an oath of office before the Secretary of the Commonwealth, and have acted as assessors with Connors, who has been elected chairman, and refuses to recognize Calabrese and Potts as assessors. Calabrese and Potts have continued to carry on their duties as assessors, with Potts as chairman.

On March 19 the city manager sent a notice to the various city department heads, including all five persons acting as assessors, in which he took the position that Connors, Calabrese, and Potts were the legal and duly constituted board, and the "only ones whose acts and doings will be recognized" by the city. This notice stated, "Any interference with the proper conduct of this board will be dealt with on this basis. It appears that the courts will eventually be requested to resolve the controversy and decide the rights of all concerned."

[1] Apparently the commissioner acted pursuant to G. L. (Ter. Ed.) c. 41, § 27, as appearing in St. 1936, c. 118, § 1, which provides, "If assessors . . . shall fail to perform their duties, the commissioner of corporations and taxation may appoint three or more persons to be assessors for such town, who shall be sworn, shall hold office until the offices of assessors are filled by the town . . . ."

The crux of the controversy is the interpretation to be given to G. L. (Ter. Ed.) c. 31, § 49A, as appearing in St. 1941, c. 414. This section occupies more than two pages in the statute book and comprises more than eleven hundred words without the advantage of any designated subdivisions. It begins: "Upon the filing with the clerk of a city . . . of a petition conforming to this section, requesting that an office or offices in such city . . . subject to this section and specified in the petition be placed within the classified civil service, the question or questions whether such office or offices shall be placed within said service shall be submitted to the registered voters of such city" at an election. "No petition under this section shall be received for filing unless it is signed by registered voters" of a prescribed number, "nor unless it bears the approval in writing of the incumbent or incumbents, at the time of the filing of the petition, of the office or offices specified therein." The question or questions shall be printed upon the official ballot "in substantially the following form:

"Question 1. (Part 1) Shall the city (or town) vote that the office of (title of office) be placed within the classified civil service? Yes . . . . . No . . . . .

"(Part 2) If it is voted to place the office of (title of office) within the classified civil service, shall the city (or town) vote to provide for the continuance in said office of (name of incumbent), the present incumbent thereof, after passing a qualifying examination? Yes . . . . . No . . . . ."

Other material provisions are: "There shall be a separate numbered question for each office sought to be placed within the classified civil service under this section."[1] "This section shall apply to any municipal office the incumbent

---

[1] By St. 1945, c. 701, § 8, which (subject to the effect of St. 1946, c. 45) amended § 49A, as appearing in St. 1941, c. 414, and was in effect on the day of referendum, a provision was added: "If more than one such question is to be submitted to the voters of a city or town at any election, such questions shall be printed on the official ballot in alphabetical order according to the surnames of the incumbents of the several offices to which such questions relate." On the ballot of November 6, 1945, there appeared a second question in two parts relative to the office of superintendent of parks and playgrounds, the incumbent of which was one John F. Howard.

of which shall have served therein continuously for not less than five years[1] immediately prior to the filing of the petition relative thereto . . . ."

The effect of the voting is contained in the following paragraph: "The office specified in Part 1 of each question submitted under this section, in answer to which a majority of the voters voting thereon vote in the affirmative, shall be placed within the classified civil service, and the tenure of office of any incumbent thereof shall be unlimited subject, however, to the provisions of this chapter; provided, that if Part 2 of the question in which said office is specified is so answered in the affirmative the incumbent thereof at the time of the filing of such petition shall, if still the incumbent thereof, be subjected by the division to a non-competitive qualifying examination for such office, and if he passes said examination, he shall be certified for said office and shall be deemed to be permanently appointed thereto without being required to serve any probationary period. If such incumbent does not pass such non-competitive qualifying examination, or if a majority of the voters voting on said Part 2 of the question does not vote thereon in the affirmative, such incumbent may continue to serve in said office, but shall not be subject to this chapter."

An assessor is a public officer. *Hobart* v. *Commissioner of Corporations & Taxation*, 311 Mass. 341, 344. Narrowly stated, the question on the merits is whether the affirmative answer of the voters to Question 1, Part 1, brought under civil service the offices of all three assessors or merely that of Connors. Careful reading of the entire section satisfies us that only the office of which Connors was the incumbent was affected. The section can apply only where the incumbent of the office has served a prescribed number of years. Here only one assessor met that requirement. The machinery for placing the question on the ballot can only be rendered operative by "the approval in writing of the in-

---

[1] Under St. 1945, c. 701, § 8 (subject to the effect of St. 1946, c. 45), the length of continuous service in a city has been raised to "not less than ten years."

cumbent or incumbents, at the time of the filing of the petition, of the office or offices specified therein." Here there were three offices and three incumbents. Only one gave the necessary written approval. Even if the other two had given such approval, it could have had no effect because neither was eligible to receive the benefit of the act. Moreover, each question must be in two parts, the first giving the name of the office and the second giving the name of the incumbent. Here there was only one question. That of necessity related to the office held by Connors whose name appeared in Part 2.

It is argued that it is strange to have a board of three only one of whom is under civil service. That, however, is a matter of policy outside our province. There is no limitation on legislative power so to provide. Nor is it an absurd construction to place upon the language in fact used. On the other hand, it would be anomalous indeed if the eligibility of only one assessor — and there can be as many as nine[1] — should provide an occasion for providing permanent jobs for the total number. It also would be an extraordinary thing to permit the written approval of one assessor to override the personal wishes of all the others. And if he could do so where he is the only one whose length of service is sufficient to allow the statute to be brought into operation, we see no limitation to his power to force into civil service the offices of other incumbents who also have served the prescribed length of time.

We are of opinion that the belated charge of illegality in the holding of the offices of assessor by Calabrese and Potts is without merit. Their offices have not been made subject to civil service. There was no appropriate occasion for the temporary appointment of a rival board of assessors by the commissioner of corporations and taxation. We are not called upon to state our views as to the applicability of G. L. (Ter. Ed.) c. 41, § 27, as appearing in St. 1936, c. 118, § 1, to an actual case where there really is no legally constituted board of assessors.

---

[1] G. L. (Ter. Ed.) c. 41, § 24, as appearing in St. 1951, c. 364.

We are asked to rule, notwithstanding the chaotic situation which, entirely without legal justification, has been introduced by certain departments of the Commonwealth into the city government of Medford, that the declaratory judgment procedure cannot apply. The question was raised by the demurrers. Some defendants contend that the city manager has no interest in the controversy, and that there is merely a quarrel between two boards of assessors of neither of which he is a member. He is, however, the appointing authority of the city. It is he who has been directed to make requisition upon the defendant director of civil service for names of persons to be appointed in place of the two defendants whom he rightly regarded as holding the office of assessor. It was to him that the defendant director gave fourteen days in which to terminate the "employment" of those two assessors. It is he who in a simultaneous communication was advised by the defendant commissioner that those two defendants had already been superseded. The plaintiff had, and still has, a present interest in knowing what are his duties with respect to appointing members of the board of assessors. Those defendants who are properly assessors are entitled to continuance in office for their respective terms. *School Committee of Cambridge* v. *Superintendent of Schools of Cambridge*, 320 Mass. 516, 519.

There is no want of necessary parties. All who claim to be assessors, temporary or otherwise, are defendants. And so are the State officers who have pronounced the view that all three offices are subject to civil service and who have acted accordingly. The Attorney General is not a necessary party. No question of constitutionality has been argued. That is the only case where the statute requires express notice be given him so that he may be heard. G. L. (Ter. Ed.) c. 231A, § 8, inserted by St. 1945, c. 582, § 1. Even then, it is not required that he be made a party. See *Lowell* v. *Boston*, 322 Mass. 709, 740–741. The rendering of an informal opinion by his office substantiating the opinion of the defendant commission did not require that he be made a party. His powers in proceedings in the nature of quo

warranto are of no present import.   See Borchard, Declaratory Judgments (2d ed.) 858–859; 62 Harv. L. Rev. 877.

Strictly speaking, this is not a trial of title to the offices of the assessors, but is an inquiry whether more than one such office has been placed within the classified civil service.   The foundation of the attempted temporary incumbency of Catino and Leonard is solely the supposed illegal incumbency of two regular members of the board each holding an appointment in his own right.   No order need be directed against those defendants who are public officers. It is not to be assumed that they will not act according to the law declared in this case.   *Mayor of Gloucester* v. *City Clerk of Gloucester*, 327 Mass. 460, 464–465.   As we are not confronted with the precise question, we make no intimation whether declaratory judgment procedure may be used solely to try title to office.   See Anderson, Declaratory Judgments (2d ed.) §§ 672, 676.   We hold that c. 231A, of which the "purpose is to remove, and to afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and . . . [which] is to be liberally construed and administered" (§ 9), contains no implied exception invalidating its remedy in the existing confusion in Medford.   That the binding declaration to be made here incidentally might affect certain illegal pretensions to the temporary office of assessor does not constitute a valid objection on the ground that this is a collateral attack on title to office.   Plainly all the advantages are in favor of a present decision.   We decline to rule that none can be made.

The interlocutory decrees overruling the demurrers are affirmed.   A final decree is to be entered containing a binding declaration that by reason of the referendum on November 6, 1945, only the office of assessor of which James Connors was the incumbent was placed within the classified civil service; and that the present board of assessors is composed of Connors, Potts, and Calabrese.

*So ordered.*