JAMES CONNORS *vs.* CITY OF MEDFORD.

Middlesex.    May 11, 1956. — June 1, 1956.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Municipal Corporations*, Officers and agents, Employees.    *Practice, Civil*, Auditor: findings; Case stated.

The report of an auditor whose findings are final is a case stated, on which no question of pleading is open and it is the duty of the trial court and of this court to order the correct judgment on the facts reported. [263–264]

Under a city ordinance establishing a compensation plan for officers and employees and specifying a certain weekly salary for "Assessor of Taxes P.T.," meaning part time, a part time assessor was not entitled to the full weekly salary so specified regardless of the number of hours worked by him, which would give him nearly as much compensation as the full time chairman of the board of assessors, rather than the weekly compensation actually paid to him in an amount bearing the same ratio to the full weekly salary so specified as the average number of hours worked weekly by him bore to a full work week. [264]

CONTRACT.    Writ in the First District Court of Eastern Middlesex dated December 8, 1954.

Upon removal to the Superior Court, the action was referred to an auditor and was heard on his report by *Sullivan, J.*

*Mark E. Gallagher, Jr.*, City Solicitor, for the defendant.

*Francis P. O'Connor*, (*Joseph V. Carroll* with him,) for the plaintiff.

WILKINS, J.    This is an action of contract by an assessor of taxes, who serves part time, for an alleged deficiency in salary payments made to him by the defendant city between March 2, 1952, and December 8, 1954. The plaintiff was actually paid $59.64 a week but, under the applicable ordinance, contends that he should have been paid an additional $28.63 a week. The case was referred to an auditor whose findings of fact were to be final. The judge ordered

judgment for the plaintiff, for the amount claimed, on the auditor's report, and the defendant appealed.

The plaintiff has been an assessor since March, 1939. From that date until March 2, 1952, he was chairman of the board. On the latter date the board elected one of its other two members chairman. The plaintiff continued to serve as assessor, as his holding of that office (but not the office of chairman) has been placed within the civil service under G. L. (Ter. Ed.) c. 31, § 49A, as appearing in St. 1945, c. 701, § 8. *City Manager of Medford* v. *Civil Service Commission*, 329 Mass. 323.

When the plaintiff first became an assessor, the city was governed under a charter providing for a mayor and board of aldermen. Beginning in January, 1950, the city has had a Plan E charter with a city manager and city council. G. L. (Ter. Ed.) c. 43, §§ 93–116, inserted by St. 1938, c. 378, § 15, as amended. See *Mayor of Gloucester* v. *City Clerk of Gloucester*, 327 Mass. 460, 463.

On July 6, 1948, the board of aldermen enacted, and on July 7, 1948, the mayor approved, an amendment to Revised Ordinances, c. 2, of the city of Medford. By § 69, after establishing the annual compensation of the mayor and of the board of aldermen, it was provided: "The compensation of all other officers and employees, except those under the direction and control of the school committee, shall be in accordance with the city of Medford compensation plan . . . effective from January 1, 1948, which plan with the classifications and rates of compensation therein contained is hereby established and made a part of this ordinance."

The classification and compensation plan which was so incorporated classified each office and employment by grade, and established a rate of compensation for each grade. In the ordinance under the heading, "Boards, Commissions, and Trustees," appears:

> Board of Assessors
> Chairman $4497.00 Yr. — S10
> Assistants 2600.00 Yr. each — S9.

Later in the ordinance there appears:

> Grade S–9 (75.00   77.50   80.00   82.50)
>     Assessor of Taxes P. T. . . .
> Grade S–10 (82.50   85.83   89.17   92.50) . . .
>     Chairman, Assessors . . . .

The letters P. T. are an abbreviation for "part time."

After the ordinance became effective, the plaintiff, as chairman, was .paid compensation at the rate of $92.50 a week, the maximum for grade S–10, and the other two members of the board received $50 weekly. In 1951 and 1952 the compensation of the plaintiff as chairman was $98 weekly and of the other two assessors $59.64 weekly. In February, 1951, the ordinance was amended by providing a general increase of $300 annually for all officers and employees included in the compensation plan. The board of aldermen through 1949, and the city council since that time, have provided in the annual budget for compensation of the chairman and of the other two assessors the amounts which they have been receiving under the interpretation of the plan by the mayor and then by the city manager.

On September 2, 1952, the compensation plan was again amended by Ordinance No. 65, which reclassified various positions into different groups. One of these, group CAF–4, includes "Assessor of Taxes P. T." This group has a salary range established at $75, 77.50, 80, 82.50. Ordinance No. 65 also provides: "There shall be paid to all persons employed in the above classifications who have reached their maximum of step ratings, an additional step rate of $2.50 weekly upon recommendation of department head, subject to approval of the city manager." Although both Ordinance No. 65 and the previous compensation plan establish a range of salaries for each position, in neither ordinance is there any express direction as to when step rate increases are payable.

Since March 2, 1952, the weekly amount of $59.64, which the plaintiff has received, "is the amount of salary before any deductions for any purpose." Subsequent to that date he has devoted an average of twenty-seven hours

weekly to his duties. In computing his salary a full work week was taken as forty hours. Compare, by way of analogy, G. L. (Ter. Ed.) c. 149, § 33A, inserted by St. 1947, c. 649, which was accepted by the defendant city on December 17, 1947.

The auditor stated the legal question as follows: "On the facts found by me, I believe that the determination of the rights of the plaintiff depends upon whether the executive authorities of the city have the right to administer the compensation ordinance in the way that it has been administered since 1948. If the city manager, as the administrative officer of the city, has the authority to interpret the ordinance as providing a salary for each position classified based upon a full time employment of forty hours per week, then I find that the compensation which the plaintiff has been receiving has been correctly computed. Because of his years of service and the satisfactory nature of his work, the plaintiff's compensation should be based upon the maximum of $82.50 per week provided in the salary range. The amount of $59.64 per week is approximately the same proportion of $82.50 per week, plus the $300 general increase of 1951, as twenty-seven hours a week is of forty hours. If the ordinance means that the salary of an assessor of taxes P. T. is fixed in the salary range of $75 to $82.50 per week without consideration of the number of hours devoted to the position, then I find that the plaintiff is entitled to the maximum rate provided in the ordinance, or $82.50 per week, plus $5.77 per week, which is the weekly amount of the $300 increase of 1951, or $88.27 per week. If the plaintiff is entitled to that rate of compensation, I find that he is entitled to recover in this action the difference between $88.27 per week and $59.64 per week, or $28.63 per week, from March 2, 1952."

The report of an auditor, whose findings of fact were to be final, is in effect a case stated, in the consideration of which no question of pleading is open. It was the duty of the trial judge, and it is now our duty, to order the correct judgment on the facts contained in the auditor's report.

*United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–109. *Union Old Lowell National Bank* v. *Paine,* 318 Mass. 313, 315–316. *New England Gas & Electric Association* v. *Ocean Accident & Guarantee Corp. Ltd.* 330 Mass. 640, 644–645.

We accept the plaintiff's contention that step rate advancement is left by the ordinance to administrative discretion, and that the city manager has determined that the plaintiff is entitled to the maximum step rate within his grade. See G. L. (Ter. Ed.) c. 41, § 108A, as appearing in St. 1948, c. 351; *Gediman* v. *Commissioner of Public Works of Boston,* 331 Mass. 658. We are unable, however, to agree with his further contention that "P. T." is merely part of the title of the office, and that the proper construction of the ordinance requires that an assessor, part time, be entitled to the full amount of the weekly salary figures given for grade S–9. It is apparent that the weekly payments to the plaintiff have been based on the maximum step rate, and that they have been computed in the manner found by the auditor. If the plaintiff's theory were correct, an assessor, part time, would be entitled to receive $88.27 weekly, irrespective of whether he worked one hour or thirty-nine hours. This does not impress us as a reasonable construction of an ordinance which in grade S–10 provides for a maximum step rate of $92.50 for a full time chairman of the board. If to this sum should be added $5.77 (one fifty-second of $300), the full time chairman would receive $98.27, only $10 more than an assessor, part time, no matter how little his part time. Should we give any weight (which the auditor did not) to the reference in the ordinance to salaries of $4,497 for the chairman and $2,600 each for the "Assistants," it would tend to confirm our conclusion. The reference to grade S–9 in connection with the "Assistants" must be to "Assessor of Taxes P. T." in grade S–9.[1] It is obvious that the sum of $2,600 cannot apply to everyone who might be an assessor irrespective of the step rate to

[1] Not assistant assessors referred to in G. L. (Ter. Ed.) c. 41, § 25A, as amended. The ordinance places them in grade S–4.

which he might be entitled. The ordinance is not a model of clarity and invites litigation. Nevertheless, we do not agree that it has established two inconsistent scales of compensation, one at $2,600 yearly and another at $82.50 weekly as applied to the plaintiff.

We have decided this case without relying upon the practical construction placed upon it by the city officers, including the plaintiff. We think that Ordinance No. 65 resulted in giving a new title to what had been grade S–9.

There is no cogency in the argument based upon an alleged reduction in salary of a civil service employee. The plaintiff's status under the civil service law was, as the auditor found, as an assessor and not as chairman of the board. See *City Manager of Medford* v. *Civil Service Commission*, 329 Mass. 323. Nothing in the record suggests that the plaintiff's salary as an assessor has been reduced. On the contrary, plainly it has not been reduced.

*Order for judgment reversed.*
*Judgment for the defendant.*