MAX WASSERMAN *vs.* MARTIN J. ROACH & another.

Norfolk. November 7, 1957. — January 2, 1958.

Present: WILKINS, C.J., RONAN, SPALDING, COUNIHAN, & WHITTEMORE, JJ.

*Contract,* What constitutes, Validity, For sale of real estate. *Lord's Day. Practice, Civil,* Auditor: findings; Case stated.

It is the duty of the trial court and of this court on the report of an auditor whose findings are final, constituting a case stated, to draw the proper inferences from the auditor's subsidiary findings, and to order the correct judgment. [567]

The fact that negotiations for a sale of real estate with a "clear title," in the course of which the prospective buyer delivered a check as a deposit to the seller, occurred on a Sunday did not, in the circumstances, preclude the buyer from recovering the deposit because of the existence of an outstanding encumbrance, where it appeared that such negotiations were not intended by the parties to amount to a final and binding sale and purchase contract but merely looked toward the subsequent preparation and execution of the customary written contract. [567–568]

CONTRACT. Writ in the Superior Court dated April 26, 1954.

The action was heard by *Cahill,* J., on an auditor's report.

*Harold Rosenwald,* (*Joseph H. Rosenshine & Hugh D. Rogovin* with him,) for the plaintiff.

*Louis L. Green,* for the defendants, submitted a brief.

WILKINS, C.J. This is an action of contract to recover the proceeds of a check, which had been given as a deposit on the purchase of a parcel of vacant land on Ash Street, Weston. The case was referred to an auditor whose findings of fact were to be final. The judge allowed a motion for

judgment for the defendants on the auditor's report. The plaintiff's exceptions raise the question of the correctness of that ruling, which involves a defence of illegality for violation of the Lord's day statute. G. L. (Ter. Ed.) c. 136, § 5.[1] *Ryan* v. *Gilbert,* 320 Mass. 682, 685.

We summarize the findings of the auditor. Pursuant to an appointment made as a result of a newspaper advertisement, the plaintiff and one Friedman, "who were both interested financially in the property," met the individual defendant (hereinafter called the defendant) on the land on Sunday, October 25, 1953. There was a discussion of boundaries and soil conditions. The plaintiff asked about the amount of ledge and walked over the land as the defendant indicated the boundaries. The defendant said that there were about twenty to twenty-five acres. They determined the number of feet of frontage. The defendant stated that he had full authority to make a deal and had to consult no one. The three men then went to the defendant's office where they discussed the cost of bringing in the town water. The defendant showed the others an atlas which described the land. The defendant offered to sell for $25,000. The plaintiff, after consulting with Friedman, replied, "I will consider the land at a price of $20,000." To this the defendant said, "I will accept your offer of $20,000." The plaintiff said, "I want a clear title," and drew and delivered a check which the defendant "demanded as evidence of their good faith as purchasers." The check, drawn on a Cambridge bank in the amount of $1,000, was dated October 24, 1953 (the previous day), and payable to the defendant. On the back of the check the plaintiff wrote, "Deposit of approx 25.36 acres Ash St — Roach Estate $20,000 less $1,000 deposit." When Friedman and the plaintiff were leaving, "they" asked the defendant who his lawyer was, and he replied, "Joseph Fine." Friedman stated that he knew him and would "contact him about drawing the neces-

---

[1] "Whoever on the Lord's day keeps open his shop, warehouse or workhouse, or does any manner of labor, business or work, except works of necessity and charity, shall be punished by a fine of not more than fifty dollars."

sary documents." It was agreed that the deed would be delivered within thirty days.

On or about November 2, 1953, Mr. Fine mailed a purchase and sale agreement, which he had prepared, to the plaintiff's lawyer. This agreement was dated November 2. The seller was named as "Roach Inc., a Massachusetts corporation having its usual place of business in Wellesley" (the corporate defendant), and the buyer as "Aryeh R. Friedman of Brookline." The property was described by metes and bounds. Conveyance was to be on or before November 6 by quitclaim deed giving title free and clear of all encumbrances except a certain easement of record. There was the provision, "For such deed and conveyance the party of the second part is to pay the sum of Twenty Thousand Dollars ($20,000), of which One Thousand Dollars ($1,000) have been paid this day and the balance is to be paid in cash upon the delivery of said deed." There were the usual clauses to be found in such an agreement. It was signed "Roach Inc. by Martin J. Roach, Treasurer." On November 2 the defendant had the check certified, and on November 3 indorsed it "M. J. Roach Roach Inc. Martin J. Roach Treas." and had it deposited to the account of Roach, Inc.

On November 10, 1953, the plaintiff's attorney told Mr. Fine by telephone that the agreement did not comply with the offer because the land was subject to an easement in favor of the abutting owner to take water. He demanded a return of the check, which was refused. The plaintiff and Friedman knew of no easement until their counsel so informed them subsequent to November 2. They would have taken a deed had there been no easement. On or about November 10 Mr. Fine told the plaintiff's lawyer that he could procure a release. He did obtain one dated November 10. On November 17 the plaintiff's lawyer wrote Mr. Fine returning the agreement. Later Mr. Fine told the plaintiff's lawyer he had a release, but he did not show it.

The auditor's report concluded: "9. As a result of the foregoing findings from paragraphs 1 to 8, inclusive, I find

that a contract was made on Sunday, October 25, 1953, whereby the plaintiff agreed to purchase, and the defendants agreed to sell the real estate on Ash Street, Weston, Massachusetts; that the contract was illegal, leaving the parties where they are at the present time. I find for the defendants."

The auditor's report was in effect a case stated, upon which it was the duty of the judge, and is now our duty, to enter the correct judgment unaffected by the auditor's inferences in paragraph 9 based upon his earlier findings. *United States Fidelity & Guaranty Co.* v. *English Construction Co.* 303 Mass. 105, 108–110. *Union Old Lowell National Bank* v. *Paine*, 318 Mass. 313, 315–316. *New England Gas & Electric Association* v. *Ocean Accident & Guarantee Corp. Ltd.* 330 Mass. 640, 644–645. *Connors* v. *Medford*, 334 Mass. 260, 263, 264.

To sustain the result that an illegal contract was made on Sunday, it must be concluded that all the material terms of the purchase and sale agreement had been fully decided and that "the writing to be drafted and delivered is a mere memorial of the contract, which is already final by the earlier mutual assent of the parties to those terms." *Rosenfield* v. *United States Trust Co.* 290 Mass. 210, 216. Restatement: Contracts, § 26. Corbin on Contracts, § 30. This would involve the conclusion that the parties became bound by an unenforceable oral contract within the statute of frauds. G. L. (Ter. Ed.) c. 259, § 1. See *Witherington* v. *Eldredge*, 264 Mass. 166, 175. In these circumstances it seems significant that the parties did not separate without learning the name of counsel, and that there was a parting statement that Friedman would get in touch with the defendant's lawyer to draw the necessary documents. Nothing was said about a mortgage. The reference to documents in the plural shows that not merely a deed was intended, but a contract of purchase and sale also must have been in mind. See *Doten* v. *Chase*, 237 Mass. 218, 220, where it was said: "The proposed agreement evidently was prepared with the purpose to bind the parties as against the defence

of the statute of frauds and that of absence of mutuality of obligation. . . . 'The circumstance that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement.' *Ridgway* v. *Wharton*, 6 H. L. Cas. 238, 268. *Lyman* v. *Robinson*, 14 Allen, 242." In the case at bar the fact that a time was agreed when the "deed" would be delivered confirms our conclusion that the parties were distinguishing between "documents" and merely a "deed." There was a clear expression that the "documents" were "necessary," and that for this purpose legal services were required. What occurred on Sunday, October 25, would not invalidate the written contract. *Maher* v. *Haycock*, 301 Mass. 594, 596–597. Restatement: Contracts, § 538, comment a.

The burden of proving illegality is on the defendants who assert it. *Savoy Finance Co.* v. *De Biase*, 281 Mass. 425, 433. *Town Taxi, Inc.* v. *Goulston*, 287 Mass. 325, 328. *Chamberlain* v. *Employers' Liability Assurance Corp. Ltd.* 289 Mass. 412, 419. *Nussenbaum* v. *Chambers & Chambers Inc.* 322 Mass. 419, 423. We are of opinion that that burden has not been satisfied. We think that the negotiations of the parties on October 25 looked toward the preparation and execution of the usual written contract of purchase and sale. The check, given in contemplation of that contract becoming effective, was to enable the seller to obtain cash when the condition upon which it was given came to pass. That condition never was satisfied, as the proposed written contract contained a description of the land which disclosed that it was the servient tenement of an easement of which the buyer had never heard. The proposed written contract also showed receipt of the deposit on November 2 which was the date of the contract as well as the date of certification. This was a Monday.

The date for performance specified was November 6, and at that time the easement was still in existence. No further date was agreed upon. The plaintiff is entitled to the return of his deposit. *Phoenix Spring Beverage Co.* v. *Harvard*

*Brewing Co.* 312 Mass. 501, 506. *Kuzmeskus* v. *Pickup Motor Co. Inc.* 330 Mass. 490, 493.

*Exceptions sustained.*
*Judgment for the plaintiff.*